Wilson H. West, et al., Plaintiffs-Appellants, v. Vernon
K. Storm, et al., Defendants-Appellees.

Gen. No. 65–57.

Fifth District.

June 2, 1966.

Rehearing denied June 22, 1966.

James B. Wham, Wham & Wham, of Centralia, for appellants.

Charles E. Herzog, of Chicago (Bell, Boyd, Lloyd, Haddad & Burns, of counsel), for Shriners Hospitals for Crippled Children, appellee. Charles E. Bliss, of Taylorville (Hershey and Bliss, of counsel), for Vernon K. Storm and St. Louis Union Trust Co., as executors, and Vernon K. Storm, Irma Jett and St. Louis Trust Co., as trustees, under the will of Albert H. Sebastian, deceased, appellees.

EBERSPACHER, J.

The circuit court on motion dismissed Count II of plaintiff's complaint to construe the will of Albert H. Sebastian, filed by certain heirs at law. Count II is based

■■■■■■

on the theory that certain provisions of the will violate the rule against perpetuities and the statute restricting accumulations.

The principal dispute concerns the meaning of the last paragraph of the first item of the will. The first item of the will reads as follows:

"FIRST: I direct the payment of all my just debts, the expenses of my last illness and of my funeral, and that said debts be paid as promptly as possible after my decease, and I further provide and direct the payment out of the assets of my estate of all taxes which may be due or a lien at the time of my death and during the course of administration of my estate including not only general taxes, but also income and estate taxes both federal and state which may be found, levied or assessed against my estate and the beneficiaries thereof under the provisions of this will, and I further direct that all letters now held by the St. Louis Union Trust Company (hereinafter appointed one of my Trustees) from me to be delivered to various persons after my death shall be so delivered regardless of the dates of said letters as if they were written today and referred to this last will and testament.

"I have erected on my burial lots in Peaceful Valley Cemetery at Odin, Illinois, a mausoleum to which I have transferred and in which I have placed the remains of my deceased wife and of my deceased daughter and all necessary inscriptions have been made on said mausoleum except the date of my death, and I further provide that when my death occurs my remains shall be placed in my said mausoleum beside those of my deceased wife and daughter, and that thereupon after my death the date of my death shall be carved thereon in letters

and figures in perfect workmanship to harmonize with the rest of said inscriptions.

"I further direct and provide that there shall be no distribution under any of the provisions of this will until all of the directions contained in this paragraph have been fully complied with."

It is the contention of appellants that the direction that the St. Louis Union Trust Company deliver the letters is a condition precedent to vesting, and since by the last paragraph of the first item no distribution was to be made until all the directions were complied with, and since there are the bare possibilities that the letters might not be delivered within the lives in being and 21 years, or might never be delivered, the rule against perpetuities is violated. Appellees contend that this provides for a postponement of possession or enjoyment rather than a condition precedent, in which case there would be no delay in vesting and the rule would be inapplicable.

██ ██ In construing a will, the court should ascertain the intention of the testator taking into account all the provisions of the will. Papa v. Papa, 377 Ill 316, 36 NE2d 717.

"That wills must be sustained, and the intention of the testator given effect by the courts, whenever it can be done without violating established rules of law, or some public policy, is a saying so often repeated it has become trite; but, nevertheless, it expresses a rule applicable to the construction of every will, when its validity, or any part of it, is called in question." Crerar, et al., v. Williams, et al., 145 Ill 625, 34 NE 467.

██ The first item of the will contained directions for: payment of just debts, expenses of last illness and

funeral and all taxes; delivery of the letters; placement of testator's remains in his mausoleum in a particular cemetery; and for an appropriate inscription on the mausoleum. The item must, of course, be read as a whole, and with and in light of the other provisions of the will. Testator has treated the provision for delivery of the letters as being in the same category as each of the other three duties of the executors prescribed in the first item. It is therefore only reasonable to conclude that he intended the delivery of the letters to be made in the same period as that normally taken for the payment of debts and for the performance of the other duties, within the normal period of administration.

█ It is also to be noted that, with the exception of the fifth item, which relates to testator's home, the will draws no distinction whatever between real and personal property. By the seventh item, the entire residue is given, devised and bequeathed to the trustees. There is no indication anywhere in the will that residual personal property was to be treated differently than the residual real property. In the seventh item, testator provides:

> "All the land which I own in fee at the time of my death . . . may be sold by my trustees either immediately or later, whenever they see fit, . . ."

The express authorization of immediate sale indicates that the testator intended the trustees to take title to the real estate upon his death.

█ The testator by the fifth item gave his home and furnishings subject to certain conditions and further made a gift in case the conditions were broken. The term "condition" was also used two other times in the will and four times in one codicil. Since testator thus knew and used the term, it would indicate he did not intend a condition where he did not use the term or provide a gift over in event of breach.

250

■ It further appears that the second item states: "I give, devise and bequeath to Pearl Ramsey, a sister of my deceased wife, the sum of One Thousand Dollars." The other bequests are in similar form. This is not the language of a conditional bequest.

■■ In the eleventh item of the will testator states that he is presently able to pay in full every gift made in the will but should the unexpected happen and at his death there not be sufficient property to pay all beneficiaries in full, then each shall be reduced pro rata. The fact that testator thought of the possibility that the estate would be insufficient, and that such insufficiency might be a reason to postpone the actual turning over of the money until such time as all taxes, including estate taxes, had been paid, and made provision for such situation, indicates that he intended reasonably expedient vesting. On the other hand, the fact that bequests may be reduced pro rata to pay debts or taxes does not prevent their being vested.

■ Distribution in an estate is commonly thought of as turning over money by the administrator or executor to the heirs or legatees. It would appear that the testator used it in this sense.

■ The devise and bequest of testator's home and furnishings, by the fifth item, to Irma Jett contained the following:

"... I give the same to her on the following conditions: She shall make the above property, and the house thereon her permanent home and residence, and she shall actually physically occupy said house at least three hundred and twenty (320) days each year; by which is meant, that she, if possible or feasible, shall actually physically occupy and pass the night in said house on said property herein described, on at least three hundred and twenty (320) days of each year, unless sickness or accident

251

requiring hospitalization should befall her, in which event the provision herein requiring actual occupancy for three hundred and twenty (320) days of each year by her shall be inoperative as long as said hospitalization, if any, continues. She shall keep the assessed taxes paid thereon when due, and never encumber said property. She shall also keep the said buildings and residence on said lots insured for not less than Fifteen Thousand Dollars ($15,-000.00), and further, the insurance on the furnishings and furniture therein at not less than Three Thousand Dollars ($3,000.00), and I further provide that if said residence should be destroyed, whether by fire or by some calamity of nature, then the insurance thereon shall be used to rebuild and reproduce said destroyed residence as fully and completely in every detail as the insurance money which may be collected thereon will permit."

Certainly, the testator who was so desirous of having his home occupied did not intend to require it to remain vacant until estate taxes were paid and then require it to be occupied 320 days and nights per year. Neither would he desire a gap in the maintenance of insurance.

By the second codicil, it is quite evident that testator wanted the taxes and insurance on his home and furnishings maintained. By it he provided funds for Irma Jett to pay these items and provided their payment in lump sum annually, while other payments were to be paid to her monthly, after distribution.

■ By giving the term "distribution" in the first item of the will its common meaning of payment or turning over of money, the devise and bequest of the home and furnishings vest immediately on death and the provisions about occupancy and insurance make sense. It thus follows that the only way we can give meaning to all parts of the will is to hold that the term

"distribution" is used in the commonly accepted sense of payment of money and thus constitutes a postponement of enjoyment rather than a condition precedent to vesting.

This interpretation avoids a delay in vesting, forfeitures of interests, and an intestacy. It also protects the gift of the residue to charity. All of these are objectives favored by the law.

The testamentary power of appointment given in the fifth item of the will must be exercised, if at all, by Irma Jett, a named living person. Thus, the power can only be exercised within the period of the rule against perpetuities. Northern Trust Co. v. Porter, 368 Ill 256, 13 NE2d 487. Under our interpretation of the will there is no accumulation. However, if there is an invalid attempt to exercise the power of appointment or should there be an accumulation beyond what is permitted by statute (c 30 Ill Rev Stats § 153), the result under this will would be an acceleration of the gift to charity rather than to have an intestacy and let in the heirs. Webb v. Webb, 340 Ill 407, 172 NE 730.

Finding no error, the order of the circuit court is affirmed.

Affirmed.

GOLDENHERSH and MORAN, JJ., concur.